UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FUNKY 544, LLC | CIVIL ACTION |
| VERSUS | NO. 20-944 |
| HOUSTON SPECIALTY INSURANCE COMPANY | SECTION M (2) |

### ORDER & REASONS

Before the Court is a motion for summary judgment filed by defendant Houston Specialty Insurance Company ("HSIC").[1] Plaintiff Funky 544, L.L.C. ("Funky") responds in opposition.[2] Having considered the parties' memoranda, the record, and the applicable law, the Court grants HSIC's motion, holding that the unambiguous language of the insurance policy excludes coverage of the claims in the underlying lawsuit. Consequently, Funky's claims for breach of contract and bad faith based on the duty to defend must be dismissed.

### I.   BACKGROUND

This matter concerns a dispute over insurance coverage. Funky owns a bar located on Bourbon Street in New Orleans, Louisiana.[3] At the relevant time, Funky had in force a commercial general liability policy issued by HSIC.[4] On November 1, 2014, at about 12:30 a.m., Shakeva Soniat and Serena Tribbit were sitting in the bar having drinks with some friends when a 19-year-old female identified as Ronestha Kelly began arguing with them.[5] Kelly had a knife and stabbed Soniat and Tribbit, who both suffered severe injuries.[6]

---

[1] R. Doc. 29.
[2] R. Doc. 45.
[3] R. Doc. 29-1 at 1.
[4] R. Doc. 1 at 2.
[5] Id.
[6] Id.

On January 29, 2015, Soniat and Tribbit sued Funky in state court alleging that Funky was negligent in numerous respects, including failing to ID bar patrons and to prevent underage drinking, which resulted in the underaged Kelly entering the bar and ordering and consuming alcohol.[7]  Funky submitted Soniat and Tribbit's petition for damages to its insurance agent, Southern Insurance Agency, which tendered it to HSIC.[8]  HSIC received the petition on February 6, 2015.[9]  Five months later, on July 24, 2015, HSIC issued a declination of coverage letter to Funky citing the policy's firearms or weapons exclusion.[10]  Funky alleges that it never received the letter.[11]  On September 10, 2015, the state court entered a preliminary default against Funky.[12]  On February 18, 2016, the state court entered a default judgment against Funky awarding to Soniat $397,925.58 in general damages, plus $47,925.58 for medical expenses, and to Tribbit $181,010.90 in general damages, plus $8,010.90 for medical expenses.[13]

On March 19, 2020, Funky filed this suit against HSIC alleging that HSIC breached the insurance contract and its duty of good faith and fair dealing by failing to provide Funky with a defense to Soniat's and Tribbit's state-court suit.[14]  Funky seeks reimbursement for the amounts awarded to Soniat and Tribbit and for its costs of defending that case, along with bad faith damages, and reasonable attorney's fees and costs for bringing this suit.[15]

---

[7] *Id.* at 2-3.  For a copy of the petition for damages filed in state court, *see* R. Doc. 29-5.
[8] R. Doc. 1 at 3.
[9] *Id.*
[10] *Id.*
[11] *Id.*  The owner of Funky, Jude Marullo, admitted at his deposition that he believes he did receive the letter and discussed the denial with his insurance agent.  R. Doc. 29-6 at 61.
[12] R. Doc. 1 at 3.
[13] *Id.* at 4.
[14] *Id.* at 4-5.
[15] *Id.* at 5.

2

## II.     PENDING MOTION

HSIC argues that it is entitled to summary judgment in its favor because it had no duty to defend Funky in Soniat's and Tribbit's state-court suit.[16]  HSIC reasons that under the "eight-corners rule," the claims alleged in the underlying lawsuit did not raise a possibility of coverage under the policy because they were unambiguously excluded by the policy's weapons exclusion.[17] According to HSIC, regardless of what acts of negligence were alleged, the damage was caused by a weapon, and the insurance policy unambiguously excludes coverage for any bodily injury or medical expenses arising out of weapons or "out of any act or omission in connection with the prevention or suppression of … weapons … whether caused by or at the instigation or direction of … patrons."[18]  Thus, HSIC argues it did not breach its duty to defend, and consequently, did not act in bad faith.[19]

In opposition, Funky argues that the underlying state-court lawsuit alleges multiple acts of negligence that are not excluded by the weapons exclusion, such as failing to ID patrons for access to the bar or alcohol, allowing underage drinking, and failing to provide adequate security, among others.[20]  Thus, asserting that these claims of negligence triggered coverage even if the weapons exclusion barred coverage of certain other claims, Funky contends that HSIC had a duty to defend the underlying suit and acted in bad faith in failing to provide a defense.[21]

---

[16] R. Doc. 29-1 at 9-18.
[17] *Id.*
[18] *Id.* (quoting R. Doc. 29-4 at 65).
[19] *Id.* at 19-20.
[20] R. Doc. 45 at 6-13.
[21] *Id.*

### III. LAW & ANALYSIS

#### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment

4

motion, a court may not resolve credibility issues or weigh evidence.  *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment.  *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001).  Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial.  *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2).  Such facts must create more than "some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden.  *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B).  Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted.  *See Little*, 37 F.3d at 1075-76.

**B. Insurance Policy Interpretation**

Under Louisiana law, an insurance policy, like any other contract, is construed according to the general rules of contract interpretation set forth in the Louisiana Civil Code.  *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003).  Contracts are interpreted to determine "the

common intent of the parties." *Id.* (citing La. Civ. Code art. 2045). "Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Id.* (citing La. Civ. Code art. 2047). An insurance policy "should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion." *Id.* A court cannot exercise "inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent." *Id.* Thus, clear and unambiguous policy wording that expresses the parties' intent is enforced as written. *Id.*

On the other hand, ambiguous provisions and "equivocal provisions seeking to narrow an insurer's obligation" are strictly construed against the insurer and in favor of coverage. *Id.* However, the strict construction principle applies only if the ambiguous policy provision is susceptible of more than one reasonable interpretation. *Id.* "The determination of whether a contract is clear or ambiguous is a question of law." *Id.*

While the insured has the burden of proving that the circumstances constitute a covered claim, the insurer has the burden of proving that any exclusions apply. *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 124 (La. 2000).

### C. The Duty to Defend

An insurer's duty to defend and its duty to indemnify are separate and distinct obligations. *Martco Ltd. P'ship v. Wellons, Inc.,* 588 F.3d 864, 872 (5th Cir. 2009) (citing *Elliott v. Cont'l Cas. Co.,* 949 So. 2d 1247, 1250 (La. 2007)). An "insurer's duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage." *Meloy v.*

*Conoco, Inc.*, 504 So. 2d 833, 838 (La. 1987).  Said differently, "an insurer's duty to defend arises whenever the pleadings against the insured disclose a *possibility* of liability under the policy." *Id.* at 839 (emphasis added).  Thus, in evaluating an insurer's duty to defend, a court examines only "'the plaintiff's pleadings and the face of the policy, without consideration of extraneous evidence.'" *La. Stadium & Exposition Dist. v. BFS Diversified Prods., LLC,* 49 So. 3d 49, 51 (La. App. 2010) (quoting *Bryant v. Motwani*, 683 So. 2d 880, 884 (La. App. 1996)).  Under the "eight-corners rule," allegations within the four corners of an insured's petition or complaint are sufficient to trigger a duty to defend when they also fall within the four corners of the insurance policy.  *See, e.g., Vaughn v. Franklin*, 785 So. 2d 79, 84 (La. App. 2001); *Plaia v. Stewart Enters., Inc.*, 229 So. 3d 480, 504-05 (La. App. 2016).  By way of contrast, in examining the duty to indemnify, a court "must apply the [p]olicy [of insurance] to the actual evidence adduced at the underlying liability trial together with any evidence introduced in the coverage case." *Martco*, 588 F.3d at 877.

    **D.  Analysis of the HSIC Policy**

The insuring agreement for bodily injury liability coverage of the HSIC policy at issue provides that the insurer:

> will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" … to which this insurance applies.  [HSIC] will have the right and duty to defend the insured against any "suit" seeking those damages.  However, [HSIC] will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" … to which this insurance does not apply.[22]

To be covered, the "bodily injury" must occur in the covered territory during the policy period.[23]  However, the HSIC policy also includes a firearms or weapons exclusion which provides:

> This insurance does not apply to, "bodily injury," … or medical expense arising out of firearms or weapons or out of any act or omission in connection with the

---

[22] R. Doc. 29-4 at 22.
[23] *Id.*

7

prevention or suppression of firearms or weapons, including failure to warn, train or supervise, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person or failure to render aid and/or notify emergency personnel.[24]

In the underlying state-court suit, Soniat and Tribbit alleged that they were injured in Funky's bar when they were stabbed by a 19-year-old patron who had been drinking.[25] They alleged that the injuries were caused by the following acts of negligence on Funky's part:

1. Failing to ID patrons prior to allowing them to enter the Funky 544, which is a twenty-one and older establishment;

2. Allowing an underage patron, Ronesha Kelly – a 19 year-old female, to enter the Funky 544;

3. Failing to have in place rules, regulations and procedures that would prohibit the sale or delivery of alcoholic beverages to underage drinkers;

4. Failing to properly enforce such procedure if it existed;

5. Failing to ID patrons at the bar prior to selling them alcohol;

6. Allowing an underage patron, Ronesha Kelly – a 19 year-old female, to consume alcohol at the Funky 544;

7. Failing to honor its duty to provide a safe environment for its patrons;

8. Creating and/or allowing an unreasonable risk of harm to exist for persons using the premises;

9. Negligently performing security work;

10. Failure to provide adequate security measures and safety measures for guests on the premises;

11. Failing to [have] heightened security and an increased number of security workers for one of the French Quarter's busiest nights of the year – Halloween night;

12. Failing to provide heightened security considering the increase in violent crimes in the French Quarter in the months prior to this incident;

---

[24] *Id.* at 65.
[25] R. Doc. 29-5 at 1-3.

13. Failing to properly screen, hire, train and/or supervise its employees, agents, and/or representatives assigned to the premises;

14. Failing to provide proper and adequate management to the premises;

15. Failing to have adequate procedures and/or safeguards in place to prevent patrons from bringing weapons into the Funky 544 and attacking other patrons;

16. Failing to prevent such acts of violence from occurring on its premises; [and]

17. Failing to prevent the assailant, Ronesha Kelly, from escaping before the police arrived[.][26]

Funky concedes that the negligent acts described in paragraphs 13 and 15 above fall within the weapons exclusion and are excluded, but it argues that the rest of the alleged acts of negligence do not, and thus fall within the four corners of the policy's coverage, thereby triggering HSIC's duty to defend Funky against the claims of Soniat and Tribbit.[27] Funky's argument is misdirected, however, as demonstrated by the decision in *Fouquet v. Daiquiris & Creams of Mandeville, L.L.C.*, 49 So. 3d 44 (La. App. 2010). In *Fouquet*, the plaintiff, who was stabbed several times at the defendant's bar, alleged that various acts of negligence by the bar caused the stabbing and that such acts were not covered by the insurance policy's weapons exclusion. The court disagreed stating that the plaintiff read "the exclusionary language too narrowly and focuse[d] solely on the negligence precluded" while failing "to recognize that the exclusions bar[red] coverage based not just on the type of negligence asserted, but more specifically, they deny coverage for 'bodily injury' stemming from the specified types of negligence." *Id.* at 48. Coverage was excluded because the plaintiff's injuries were related to, and the direct result of, the stabbing. *Id.* at 48-49 ("[A]s the only 'bodily injuries' alleged are those stemming from the actual stabbing, those injuries clearly fall within the ambit of [the] weapons exclusion[].").  The same holds true here. All of

---

[26] *Id.* at 3-4.
[27] R. Doc. 45 at 6-9.

Soniat's and Tribbit's alleged injuries arose from the stabbing, and the HSIC policy clearly excludes coverage for "bodily injury" arising out of the use of weapons by patrons. Funky makes no allegations that it sustained any separate injuries as a result of its alleged acts of negligence. In short, without the stabbing, there would have been no damage, regardless of any other alleged act of negligence on Funky's part. Thus, under the eight-corners rule, HSIC had no duty to defend Funky in the underlying lawsuit. Moreover, because there was no duty to defend, and the same reasons that negate the duty to defend (*viz.*, the weapons exclusion) also negate any possibility the insurer will ever have a duty to indemnify, *see LCS Corr. Servs., Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 669 (5th Cir. 2015), HSIC cannot have acted in bad faith. *See Smith v. Citadel Ins. Co.*, 285 So. 3d 1062, 1069 (La. 2019) ("In the absence of a contractual obligation, the duty of good faith does not exist.").

## IV.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that HSIC's motion for summary judgment (R. Doc. 29) is GRANTED, and Funky's complaint is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 5th day of May, 2021.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE